IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT B. FRYER, | ) | |
| | ) | |
| Appellant, | ) | No. 2:06-cv-0550 |
| | ) | |
| v. | ) | Appeal taken from |
| | ) | Bankr. Nos. 01-31247 and 03-2337 |
| ENTERPRISE BANK, | ) | |
| | ) | Judge Thomas M. Hardiman |
| Appellee. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Appellee Enterprise Bank (Enterprise) brought an adversary proceeding in Bankruptcy

Court, seeking a determination that it had an enforceable mortgage lien on certain real property

belonging to the bankruptcy estate of Jean E. Fryer. Besides the Trustee, Enterprise named

several of Ms. Fryer's relatives — including her son, appellant Robert B. Fryer (Fryer) — as co-

defendants in that action. After a four-day trial, United States Bankruptcy Judge Bernard

Markovitz entered judgment in favor of Enterprise. In its order dated August 26, 2005, the

Bankruptcy Court held that Enterprise had a valid, enforceable first priority mortgage lien on the

real properties in Ms. Fryer's estate.

Pursuant to its usual practice, the Bankruptcy Court mailed copies of the August 26, 2005

order to all of the parties and counsel, including Fryer — who was proceeding *pro se*, as he is

here. On September 16, 2005, Fryer filed in the Bankruptcy Court a document captioned

"Petition Seeking Permission For Leave To File An Appeal, Out Of Time." In that petition,

Fryer alleged that he had not received the August 26, 2005 order soon enough to file a timely

appeal, which the Federal Rules of Bankruptcy Procedure require to be filed within ten days from the date of the judgment. Fryer blamed the U.S. Postal Service as well as the Bankruptcy Court Clerk for this snafu.

To determine whether to forgive the untimeliness of Fryer's appeal, the Bankruptcy Court held a hearing on his petition on October 28, 2005. Fryer set forth his jeremiad of failed mail delivery under oath at that hearing. The Bankruptcy Court was unpersuaded, however, and issued an order denying Fryer's petition on October 31, 2005. In that order, the Bankruptcy Court specifically found that Fryer's statements regarding the reasons for his failure to timely file a notice of appeal were not credible. On the basis of that adverse credibility determination, and because Fryer had not presented any meritorious issue for appeal, the Bankruptcy Court concluded that Fryer had not demonstrated excusable neglect.

The Bankruptcy Court mailed Fryer a copy of its October 31, 2005 order, as it had done with its previous orders. After five months passed, the Bankruptcy Court ordered the distribution of funds from Ms. Fryer's estate on March 30, 2006. The very next day, on March 31, 2006, Fryer filed a document captioned "A Petition To The United States Bankruptcy Court To Allow Robert B. Fryer To Appeal Its Recent Opinion In Favor Of Enterprise Bank To The United States District Court."[1] Fryer did not wait for the Bankruptcy Court to rule on this "petition," however.

---

[1]     The Bankruptcy Court's docket sheet for Ms. Fryer's proceeding reflects that the Bankruptcy Court apparently construed Fryer's "Petition" as an actual notice of appeal, perhaps because, on the same day that Fryer filed his "petition," he also filed a Civil Cover Sheet naming himself as plaintiff, and paid the $255 filing fee to this Court. Further evidence that Fryer intended this document to be a notice of appeal (rather than a petition seeking leave to file a late appeal) is the fact that, on April 10, 2006, he filed a designation of record. *See* Fed. R. Bankr. P. 8006 (requiring litigants to file a designation of record within ten days of filing a notice of appeal, but not imposing a similar requirement for motions to file appeals out of time).

2

Instead, on April 25, 2006, he filed a document captioned "Notice of Appeal" (Appeal) in this Court.

In his Appeal, Fryer acknowledges: "This Petition for Permission To Appeal To The United States District Court, should have been filed months ago!" Once again, Fryer blames failed mail delivery — this time, alleging that the Bankruptcy Court's October 31, 2005 order was sent to "a vacant lot" instead of his home address — for his untimeliness. On May 1, 2006, Enterprise filed a "Motion to Dismiss Appeal or, in the Alternative, to Strike Items from Record on Appeal" (Motion), in which it argued, *inter alia*, that the Court lacked jurisdiction over the Appeal. For the reasons that follow, the Court will dismiss the Appeal.

## II.     Discussion

In this appeal, Fryer challenges three orders: (1) the Bankruptcy Court's August 26, 2005 order in favor of Enterprise in Bankruptcy Court Case No. 03-2337; (2) its October 31, 2005 order denying him leave to file a late appeal in the same matter; and (3) its March 30, 2006 order authorizing the distribution of Ms. Fryer's assets, entered in Bankruptcy Court Case No. 01-31247.[2] But Fryer is not entitled to relief unless he can show that the Court has jurisdiction to review the Bankruptcy Court's October 31, 2005 order, and that the Bankruptcy Court abused its discretion *vis a vis* the August 26, 2005 order. Thus, the Court will begin its inquiry by examining the question of jurisdiction of the October 31, 2005 order.

---

[2]     Ms. Fryer filed the earlier case, No. 01-31247, as a voluntary Chapter 13 proceeding in the Bankruptcy Court on November 2, 2001. That matter was converted into a Chapter 7 proceeding on January 11, 2002. Ms. Fryer died on December 9, 2002. On May 27, 2003, Enterprise filed the adversary action, No. 03-2337, seeking to enforce its claims to the real property in Ms. Fryer's estate.

3

The Federal Rules of Bankruptcy Procedure provide that a party may "appeal from a final judgment, order, or decree of a bankruptcy judge to a district court" as of right "by filing a notice of appeal with the [bankruptcy court] clerk within the time allowed by Rule 8002." *See* Fed. R. Bankr. P. 8001. Rule 8002 provides that "[t]he notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002(a). Beyond that 10-day period, the rules provide a narrow window in which late appeals may be accepted at the discretion of the Bankruptcy Court:

> A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect.

*See* Fed. R. Bankr. P. 8002(c)(2). Thus, because the Bankruptcy Court issued its order on October 31, 2005, Fryer had 10 days — or until November 10, 2005 — to notice his appeal of that order. *See* Fed. R. Bankr. P. 8002(a). Alternatively, Fryer could have filed a request to extend the time for filing a notice of appeal of the October 31, 2005 order between November 11 and November 30, 2005. *See* Fed. R. Bankr. P. 8002(c)(2).

With this rule in mind, the following facts are salient. The Bankruptcy Court issued its order declining to extend the time for filing the appeal on October 31, 2005. Fryer did not notice an appeal of that order within the 10-day period. Nor did he seek leave to file a late notice of appeal within the 20-day window that followed. Instead, Fryer waited to notice his appeal of that order until March 31, 2006, *i.e.*, 151 days after the order was issued, and 121 days too late.

4

## A.    Fryer's 151-Day Delay In Challenging The Bankruptcy Court's October 31, 2005 Order Deprives This Court Of Jurisdiction

Against this factual backdrop, the Court must address the question of its jurisdiction. In its Motion, Enterprise argues that the Court lacks jurisdiction over this appeal because Fryer did not challenge the Bankruptcy Court's October 31, 2005 order within the combined 30-day period provided by Rule 8002(a) and (c)(2). After reviewing the record and the applicable authority on point, the Court agrees with Enterprise.

Ordinarily, the Court has jurisdiction to hear bankruptcy appeals pursuant to 28 U.S.C. §158(a), which provides that "district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees . . . of bankruptcy judges under section 157 of this title." Appeals to the district court "shall be taken in the same manner as appeals in civil proceedings . . . and in the time provided by Rule 8002 of the Bankruptcy Rules." *See* 28 U.S.C. §158(c)(2).

However, a party's failure to file a notice of appeal within the 30-day period set forth in Rule 8002(a) and (c)(2) "deprives the Court of jurisdiction to review the Bankruptcy Court's order or judgment." *See In re American Metrocomm Corp.*, 328 B.R. 92, 93 (D. Del. 2005) (citing *In re Universal Minerals,* 755 F.2d 309 (3d Cir.1985)). Thus, excusable neglect such as would warrant granting an extension of time to file an appeal within the 11- to 30-day window cannot be found where the issue was raised for the first time after Rule 8002's time limit has expired. *See Shareholders v. Sound Radio, Inc.,* 109 F.3d 873, 879 (3d Cir. 1997).

In this case, Fryer did not even attempt to appeal the Bankruptcy Court's October 31, 2005 order denying him leave to file an appeal out of time until March 31, 2006: 121 days too late. Because *In re Universal Minerals* and *Sound Radio* remain good law in the Third Circuit,

the Court concludes that Fryer's 121-day tardiness in appealing the Bankruptcy Court's October

31, 2005 order is an insurmountable jurisdictional bar. Accordingly, the Court lacks jurisdiction

to reach the merits of Fryer's claim that the Bankruptcy Court erred in denying him permission to

file a late appeal of the October 31, 2005 order. That being so, the Court may not reach the

merits of the Bankruptcy Court's August 26, 2005 order, which adjudicated the validity and

priority of Enterprise's lien.

## B.    Even If The Court Had Jurisdiction, It Would Conclude That The Bankruptcy Court Did Not Abuse Its Discretion In Rejecting Fryer's Late Appeal Of Its August 26, 2005 Order

Ordinarily, this Court's conclusion that it lacks jurisdiction would end its inquiry and

require dismissal of Fryer's appeal without reaching its merits. *See In re Pressman-Gutman Co.,*

*Inc.*, 459 F.3d 383, 392 (3d Cir. 2006). But two recent opinions of the United States Supreme

Court and an unpublished opinion of the Third Circuit Court of Appeals suggest that appellate

courts are retreating from a rigid jurisdictional interpretation of the bankruptcy rules in general,

and of Rule 8002 in particular.[3] Accordingly, the Court holds in the alternative that — even if it

had jurisdiction of this appeal — it nevertheless would conclude that the Bankruptcy Court acted

well within its discretion when it denied Fryer's petition to file a late appeal of its August 26,

2005 order adjudicating Enterprise's lien.

---

[3]     Two recent United States Supreme Court opinions, *Kontrick v. Ryan,* 540 U.S. 443, 455-56, (2004) and *Eberhart v. United States,* ___ U.S. ___, 126 S. Ct. 403, 407 (2005), observed that at least some of the time constraints contained in the bankruptcy rules are claim-processing rules which do not affect federal subject matter jurisdiction. Although neither *Kontrick* nor *Eberhart* mentioned Rule 8002, those cases have cast some doubt as to whether Rule 8002 is a jurisdictional bar. The Third Circuit appears to be leaning toward an interpretation of Rule 8002 as a "claim-processing" provision. In an unpublished decision, the Third Circuit recently noted that, "[u]nder *Eberhart*, the time limits of Rule 8002 are not jurisdictional." *In re Ezekoye,* No. 04-4017, 2006 WL 1683483, at *2 n.2 (3d Cir. June 20, 2006).

The Court begins with the proposition that it may not overturn the Bankruptcy Court's decision to deny a motion for an extension of time to file an appeal absent in abuse of discretion. *See Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000). Because this Court sits as an appellate court in bankruptcy cases, "[w]e will set aside the Bankruptcy Court's findings of fact if they are clearly erroneous and review its conclusions of law de novo." *In re Kaiser Aluminum Corp.,* 456 F.3d 328, 334 (3d Cir. 2006) (citation omitted). A bankruptcy judge's credibility determinations are factual findings, and therefore cannot be overturned unless clearly erroneous. *See Donaldson v. Bernstein,* 104 F.3d 547, 556 (3d Cir. 1997). This standard of review is justified by the fact that the bankruptcy judge "is in the unique position to hear the evidence and assess the credibility of the witnesses." *In re Molded Acoustical Products, Inc.,* 150 B.R. 608, 615 (E.D. Pa. 1993).

On this point, the following facts are relevant. After the trial on Enterprise's complaint, the Bankruptcy Court issued its August 26, 2005 order, in which it found that Enterprise held a valid, first priority mortgage lien on Ms. Fryer's real property. The date of that order, August 26, 2005, set the 10-day clock running for Fryer to notice his appeal. *See* Fed. R. Bankr. P. 8002(a). The parties do not dispute that Fryer's September 16, 2005 notice fell outside this 10-day period, but within the 20-day window in which the Bankruptcy Court could consider granting an extension.[4] *See* Fed. R. Bankr. P. 8002(c)(2).

To determine whether the circumstances warranted an extension, the Bankruptcy Court applied *Pioneer Investment Servs. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380 (1993),

---

[4]     Because intermediate weekends and holidays are included in the computation of time unless the time period at issue is less than eight days in bankruptcy proceedings, *see* Fed. R. Bankr. P. 9006(a), and because September 5, 2005 was Labor Day, Fryer's notice was due no later than September 6, 2005.

which established the following four factors to be considered when assessing claims of excusable neglect: (1) the reason for the delay, including whether it was within reasonable control of the movant; (2) whether or not the movant acted in good faith; (3) the danger of prejudice to the movant; and (4) the length of the delay and its possible impact on judicial proceedings. *See Pioneer*, 507 U.S. at 395.[5]

As a legal matter, the parties do not dispute, and the Court agrees, that the application of the *Pioneer* factors to Rule 8002(c)(2) was appropriate. *See Sound Radio*, 109 F.3d at 879. The Bankruptcy Court made detailed findings regarding each of these factors — although it did not apply them all to the facts of Fryer's petition and relied more heavily on some factors than others — and concluded its analysis by finding that "[t]he first and third of these requirements is not present here."

The Court will review the Bankruptcy Court's factual findings as to each of the *Pioneer* factors below. As will be explained, the Court finds that the Bankruptcy Court did not commit clear error in reaching these factual findings. That being so, the Bankruptcy Court's application of these facts to *Pioneer* to reach the ultimate determination that Fryer had failed to demonstrate excusable neglect such as would justify permitting him to take a late appeal of the August 26, 2005 order was not an abuse of discretion.

---

[5]     To facilitate the most logical treatment of the issues presented in Fryer's case, the foregoing factors are listed in a different order than *Pioneer* and the Bankruptcy Court had listed them. *See* 507 U.S. at 395.

8

### 1.   The Bankruptcy Court Did Not Commit Clear Error In Concluding That The Delay Was Within Fryer's Reasonable Control

Regarding the alleged reason for the delay — *i.e.*, that the Bankruptcy Court's August 26, 2005 order supposedly was not delivered to Fryer's mailing address in time for him to notice his appeal within the 10-day period provided by Rule 8002(a) — the Bankruptcy Court found that "Fryer's statements at the hearing were not credible," and found that the delay was reasonably within his control.  The court explained:

> Although Mr. Fryer claimed that he did not receive a copy of the judgment until September 15, 2005, another item he allegedly received at the same time was post-marked September 16, 2005. This undermines the credibility of his assertion that he did not receive a copy of the judgment until after the 10-day appeal period had passed.  To the contrary, we accept the offered tangible proof in the form of the envelope transmitting the order post-marked August 26, 2005, admittedly received by Mr. Fryer [as proof] that in fact he received the order on or about August 26, 2005.

"Due consideration must be given to the bankruptcy court's opportunity to judge the credibility of witnesses." *In re Burgart*, 141 B.R. 90, 91 (W.D. Pa.1992); *see also* Fed. R. Bankr. P. 8013. The Bankruptcy Court was entitled to infer that inconsistencies between Fryer's testimony and the other evidence of record reflected negatively upon his credibility.  *See In re Gioioso,* 979 F.2d 956, 958-59 (3d Cir. 1992) (accepting the bankruptcy court's adverse credibility finding based on discrepancies between the sworn testimony and the evidence of record).

Nor can the Court say that the Bankruptcy Court's rejection of Fryer's proffered excuse was clearly erroneous as a matter of fact.  Particularly compelling is the Bankruptcy Court's conclusion that, in light of Fryer's claim to have retrieved a letter postmarked September 16, 2005 from his mailbox on September 15, 2005, his complaints about his mail service were unreliable.  Here, it bears emphasis that Fryer must show that the Bankruptcy Court's adverse

9

credibility determination was clearly erroneous. *See Donaldson*, 104 F.3d at 556. Although

Fryer claims to be "bewilder[ed]" by this factual finding and denies that it is true, he does not

point to any evidence showing that it is clearly erroneous. Without such a showing, the Court

may not disturb the Bankruptcy Court's conclusion that Fryer's testimony about the reason for

his delay was not credible. *See In re Denochick,* 287 B.R. 632, 633 (W.D. Pa. 2003) (declining

to overturn the Bankruptcy Court's factual findings absent clear error).

     None of the "new" evidence Fryer offers this Court demonstrates that the Bankruptcy

Court's findings were clearly erroneous. Fryer's attempt to establish error consists chiefly of a

December 15, 2005 letter that he received from Richard L. Sekinger, the Postmaster for his

neighborhood, evidently in response to Fryer's "request for a letter stating the reason a mail

piece, sent to you by the court, was delayed in receipt." Even if this letter had been before the

Bankruptcy Court at the time it made its October 31, 2005 decision, the Postmaster's comments

would not have helped Fryer establish excusable neglect. Mr. Sekinger stated:

> Your mail was delivered in a timely manner in August, 2005, to a
> mailbox that is shared by other residents at your address. Your
> mail was not placed on hold by you, but when your mail
> accumulated in the mailbox for three days, it was brought back to
> the post office by the carrier and held for inquiry, according to
> Postal Regulations. A new carrier took the bundle of mail back out
> for delivery in September.

This letter is of marginal relevance because reference to "August 2005," without more, leaves it

unclear *which* three-day span of mail was delivered to Fryer's mailbox, and then returned to the

Post Office. Thus, from this letter it is impossible to ascertain whether the Bankruptcy Court's

August 26, 2005 order was among the mail that the U.S. Postal Service delivered during the

period in which Fryer was, for some unexplained reason, not retrieving his mail. Even assuming

10

that the order *was* among the items returned to the Post Office, Fryer's failure to remove

correspondence from his own mailbox for several consecutive days, while neglectful, does not

constitute excusable neglect under Fed. R. Bankr. P. 8002. *See Taylor v. American Property

Locators, Inc.,* 220 B.R. 854, 854 n.1 (E.D. Pa.1998) (explaining that ordinary neglect does not

meet the Rule 8002 standard); *see also In re Wilson,* No. 06-40027, 2006 WL 2662008, at *3

(Bankr. D. Idaho Sept. 15, 2006) (holding that a debtor's "failure to retrieve his mail from the

mailbox" did not amount to excusable neglect); *In re American Metrocomm*, 328 B.R. at 93 ("a

party's failure to receive notice of the entry of an order does not amount to excusable neglect,

because a party has an independent duty to keep informed of the progress in his or her case.").

Thus, Mr. Sekinger's letter — along with a September 16, 2005 letter from James N. Perich, an

attorney who attested that Fryer seemed "surprised" when told of the Bankruptcy Court's August

26, 2005 holding the following month — is immaterial.[6]

---

[6]     Enterprise moves to strike several exhibits Fryer has designated on appeal, including Mr.
Perich's September 16, 2005 letter and the Postmaster's December 15, 2005 letter, which
exhibits were not before the Bankruptcy Court at the time it issued its October 31, 2005
order. It is true that a district court's review of bankruptcy appeal is limited to the record
before the Bankruptcy Court. *See In re Paoli R.R. Yard PCB Litigation,* 221 F.3d 449,
460 (3d Cir. 2000) (citation omitted). Whether or not the Bankruptcy Court considered
Fryer's new exhibits, evidently it did permit them to be filed and designated as part of
the record on appeal. And although Enterprise filed a counter-designation of the record
on appeal on April 20, 2006, it did not move to strike these exhibits in the Bankruptcy
Court. "The Bankruptcy Court resolves disputes over the proper contents of the
appellate record in the first instance." *In re Neshaminy Office Bldg. Associates,* 62 B.R.
798, 802 (E.D. Pa. 1986) (citation omitted). Accordingly, the Court denies Enterprise's
motion to strike. *See id.* (declining to strike exhibits that the Bankruptcy Court
improperly designated as part of the appellate record, even though those exhibits were
not in evidence at the time the Bankruptcy Court made its decision).

11

### 2.     The Bankruptcy Court Did Not Commit Clear Error In Concluding That Fryer Was Not Acting In Good Faith And Could Not Demonstrate Prejudice

As to the second and third *Pioneer* factors — *i.e.,* whether or not Fryer had acted in good

faith or had shown a danger of prejudice — the Bankruptcy Court made extensive findings of

fact. Regarding Fryer's lack of good faith, the court stated:

> In our estimation, Mr. Fryer wishes to appeal merely for the sake of
> appealing.  He has behaved in a similar manner in this bankruptcy
> case, filing one incomprehensible motion after another without any
> sound basis for doing so . . . . [W]e do not see that Mr. Fryer is
> aggrieved by the decision of August 26, 2005, and are convinced
> that he is wasting scarce judicial resources "just because."

The Bankruptcy Court also rejected the notion that Fryer would be prejudiced by the denial of

leave to file a late appeal, explaining:

> [Fryer] has not filed a proof of claim and, therefore, has little
> likelihood of a distribution[,] especially in view of the fact that a
> secured creditor [*i.e.*, Enterprise] has a probability of receipt of the
> lion's share of the estate. . . .  We also do not see that Mr. Fryer
> [h]as a colorably meritorious issue to appeal.  When asked what
> reversible error the court committe[d], Mr. Fryer averred that one
> of the cases upon which we relied was "old." . . . .  The dispute in
> this adversary action was between [Enterprise] and the Trustee.
> The judgment of August 26, 2005, does not affect Mr. Fryer one
> way or the other.

Fryer does not contend that these justifications for the Bankruptcy Court's findings are erroneous

as a legal matter. Although Fryer challenges the factual findings that the Bankruptcy Court made

in reaching each of these conclusions on the good-faith and prejudice prongs of *Pioneer*, the

Court finds that his contentions are unavailing.

For example, Fryer argues that he had other grounds for appealing the August 26, 2005

order besides the one mentioned by the Bankruptcy Court, and identifies those grounds. He does

12

not, however, provide any indication that any of those grounds were meritorious. Indeed, each of the grounds he identifies involved factual disputes which already had been resolved against him — but he has not shown that the Bankruptcy Court committed clear error in its resolution of these disputes. (*See* Appeal at 13-16). And although Fryer "invites anyone to attempt to find any false statements, that he knowingly made" in connection with the bankruptcy proceedings," (*see* Appeal at 18), this invitation improperly shifts the burden. The Bankruptcy Court was not required to find that Fryer actually was lying in order to conclude that the "good faith" prong of *Pioneer* cut against him. Rather, it is *Fryer* who must now show that the Bankruptcy Court's factual determinations as to his good faith and lack of prejudice were clearly erroneous. *See Kaiser Aluminum,* 456 F.3d at 334. He has not met that burden.

### 3. The Bankruptcy Court's Failure To Address The Length Of Delay And Its Possible Impact On The Judicial Proceedings Does Not Undermine Its Conclusion That Fryer Showed No Excusable Neglect

For the sake of completeness, the Court observes that the Bankruptcy Court did not make a specific holding as to the fourth and final *Pioneer* factor — *i.e.,* whether the length of the delay and its possible effect on the judicial proceedings weighed for or against granting an extension of time to notice the appeal. Although Fryer does not raise this issue, the Court finds that this omission does not compromise the Bankruptcy Court's determination that Fryer's neglect was inexcusable.

The Third Circuit has noted that a Bankruptcy Court may decline to find excusable neglect, even when fewer than all of the *Pioneer* factors weigh against the movant. *See In re American Classic Voyages Co.*, 405 F.3d 127, 134 (3d Cir. 2005) (affirming Bankruptcy Court's refusal to find excusable neglect where three of the four *Pioneer* factors weighed in favor of that

13

finding). And although "[a]ll factors must be considered and balanced; no one factor trumps the others," *In re American Classic Voyages*, 405 F.3d at 133, the Bankruptcy Court may give particular weight to one factor. *See id.* at 134 (relying "primarily" on the *Pioneer* factor regarding the reason for the delay and the movant's control of it). Thus, the Bankruptcy Court's decision to give extra weight to the "first and third" *Pioneer* factors was not error.

In sum, even if the Court had jurisdiction of this appeal, Fryer has not shown that any of the factual findings that the Bankruptcy Court made in support of its *Pioneer* analysis in its October 31, 2005 order — including the core finding that his testimony was not credible — were clearly erroneous. *See Kaiser Aluminum Corp.,* 456 F.3d at 334; *see also Donaldson*, 104 F.3d at 556. That being so, and because Fryer does not claim that the Bankruptcy Court applied an incorrect legal standard in its assessment of excusable neglect, he cannot show that the Bankruptcy Court's denial of his petition for an extension of time to appeal the court's August 26, 2005 order amounted to an abuse of discretion.[7] *See Jones,* 212 F.3d at 205.

---

[7]     This alternate basis for the Court's holding obviates the need to discuss Fryer's contention that he did not receive the Bankruptcy Court's October 31, 2005 order because the Clerk mailed it "to a wrong address of a vacant lot." (Appeal at 2). In any event, such a contention appears to be baseless. The Bankruptcy Court's service docket lists Fryer's address as "653 LaMarido Street, Pittsburgh, PA 15226": the same address that Fryer lists on his Appeal in this Court. (*See* Case No. 06-550, Doc. #1). The Court observes that any confusion as to his whereabouts may be caused by Fryer himself — who occasionally has listed his mailing address as: "653 LaMarido Street, Pittsburgh, PA 15336." (*See* Case No. 06-550, Doc. #1-6). The Court takes judicial notice of the fact that the address on the Bankruptcy Court's proof of service as well as that listed on the cover of Fryer's Appeal in this Court actually does exist, whereas the address Fryer has given this Court on some of the documents attached to his Appeal does not exist at zip code "15336." *See* http://www.google.com/maps (last visited on October 18, 2006).

**C.    To The Extent That Fryer's Appeal Of The Bankruptcy Court's March 30, 2006 Order Is Not Foreclosed By The Untimeliness Of His Appeal On The Merits, He Is Not An "Aggrieved Person" With Standing To Challenge The Distribution**

Finally, the Court turns to Fryer's purported appeal of the Bankruptcy Court's March 30, 2006 order of distribution in Case No. 01-31247. Given that any challenge to the distribution order would be inextricably intertwined with the merits of orders that Fryer either has not or cannot appeal, the Court's determination that Fryer is barred from attacking the Bankruptcy Court's October 31 and August 26, 2005 orders precludes him from attacking the March 30, 2006 distribution order. Even if Fryer could show that the distribution order entered in the bankruptcy proceeding was somehow independent of the orders entered against him in the adversary action, however, the Court would find that his failure to file a proof of claim in the underlying bankruptcy action — along with his failure to object to the proposed distribution — deprives him of standing to appeal the Bankruptcy Court's March 30, 2006 order.

The question whether Fryer has standing "is analogous [. . .] to the threshold question of Article III subject matter jurisdiction." *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (citation omitted) (alteration in original). Although Enterprise does not actively brief the issue of standing, the Court cannot proceed to the merits of this claim unless it is satisfied that a justiciable controversy exists. Assessing the merits of Enterprise's Motion "is a separate inquiry from the threshold issue of Article III standing." *The Pitt News*, 215 F.3d at 360.

15

Although the Bankruptcy Code does not include an appellate standing provision, the

Third Circuit continues to rely on the "persons aggrieved" standard. *See In re Dykes,* 10 F.3d

184, 187 (3d Cir. 1993). Parties are "persons aggrieved by an order of a referee" if the order

"diminishes their property, increases their burdens, or impairs their rights." *In re Dykes,* 10 F.3d

at 187 (citation omitted). "Thus, only those whose rights or interests are directly and adversely

affected pecuniarily by an order of the bankruptcy court may bring an appeal." *In re PWS*

*Holding Corp.,* 228 F.3d 224, 249 (3d Cir. 2000) (citation and internal quotation marks omitted).

However, "[a]ppellate standing in the bankruptcy context is more restrictive than Article III

standing." *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004) (citation

and internal quotation marks omitted). "This more stringent appellate standing requirement rests

on the particularly acute need to limit appeals in bankruptcy proceedings, which often involve a

myriad of parties indirectly affected by every bankruptcy court order." *Id.* (citation, alterations,

and internal quotation marks omitted). A litigant's status as a "person aggrieved" — and thus,

his standing to appeal a judgment of the Bankruptcy Court — is a question of fact for the district

court. *See In re Dykes,* 10 F.3d at 188.

The Bankruptcy Court record in Case No. 01-31247 reflects that, on or about March 5,

2005, the Bankruptcy Court filed and served a document captioned:

**NOTICE OF FILING OF FINAL ACCOUNT OF TRUSTEE
SCHEDULING HEARING ON APPLICATIONS FOR COMPENSATION
AND PROPOSED FINAL DISTRIBUTION COMBINED WITH
<u>ORDER FIXING DEADLINE FOR FILING OBJECTIONS THERETO</u>**

(*See* Bankr. Case No. 01-31247, Doc. #348, dated 3/5/06) (capitalizations, boldface and

underlining in original). The Proposed Distribution listed the people and entities who would

receive proceeds from the distribution. Although Fryer was not among those scheduled to

receive a disbursement, he was served a copy of the notice by mail at his home address.[8]  The

notice further stated:

> **IT IS ORDERED AND YOU ARE FURTHER NOTIFIED** that
> **March 28, 2006** is fixed as the last day for the filing of an
> objection to the application(s) for compensation and expenses,
> final report and account, and proposed distribution of property of
> the estate.

(*See* Bankr. Case No. 01-31247, Doc. #348, dated 3/5/06) (capitalizations and boldface in

original).  Notwithstanding the clarity of this notice and the urgency that it conveyed, a review of

the Bankruptcy Court's docket confirms that neither Fryer nor anyone else filed objections to the

proposed distribution.  Accordingly, on March 30, 2006 — two days after the deadline for filing

objections had passed — the Bankruptcy Court ordered the distribution and removed its April 4,

2006 hearing from the calendar.

In light of this procedural history, it is evident that Fryer does not have standing to appeal

the March 30, 2006 order.  First, assuming that Fryer is attacking the distribution on the theory

that he is a creditor of Ms. Fryer's estate, at no point did he file a proof of claim in Bankruptcy

Court, as the he was required to do.[9]  *See* Fed. R. Bankr. P. 3002.  Fryer's failure to file a claim

---

[8]     The March 5, 2006 proof of service reflects that Robert Fryer's copy was mailed to him
at "653 LaMarido Street, Pittsburgh, PA 15226-1347." (*See* Bankr. Case No. 01-31247,
Doc. #348, dated 3/5/06).  Fryer does not dispute that he received the March 5, 2006
order.

[9]     At the hearing on October 18, 2005, Enterprise pointed out that Fryer had never filed a
proof of claim, an averment that he did not deny.  Although Fryer now contends that a
document he filed in the Bankruptcy Court in Case No. 01-31247 on January 15, 2003
was "much more than just [. . .] a claim against the Fryer estate," *see* Appeal at 11, he
does not argue that this document should have been regarded as an informal proof of
claim.  A review of that document, which was captioned "A Petition For The Court To
Order An Inquirey [*sic*] Concerning Assets Being Considered Possessions Of The Fryer
Estate When They Are Not, Possessions Of An Heir To The Estate That Have Been

before the bar date likely meant that he could not even object to — let alone appeal — the

proposed distribution. *See, e.g.*, *In re Patriot Co.*, 303 B.R. 811, 815 (8th Cir. BAP 2004)

(Chapter 7 debtor's principal shareholder who had not filed a proof of claim and was not listed as

a creditor in the schedules "did not have standing to either object to the compromise or to file

[an] appeal," even though he did not receive a notice of the proposed compromise); *see also In re*

*Stewart*, 46 B.R. 73, 77 (Bankr. D. Or. 1985) (creditor who failed to timely file proof of claim

was not a party in interest and had no standing to object to confirmation of Chapter 13 debtor's

planned distribution).[10]

Second, even if the Court could find some basis for concluding that Fryer's January 15,

2003 petition was an informal proof of claim — a conclusion that Fryer does not even invite, let

alone support with any citation to the record — the absence of his name on the proposed

distribution circulated to the parties on March 5, 2006 would support only one inference:  that

----

> Sold, And Other Items That Have Been Unjustly Retained," does not make a demand on
> the estate; rather, it raises a quibble with the *contents* of that estate.  As such, it would
> not satisfy the requirements for an informal proof of claim.  *See In re American Classic*
> *Voyages,* 405 F.3d at 132.

[10]   Although the Third Circuit has yet to address this precise issue, the Court is persuaded
by the reasoning set forth in *Callahan v. Moneta Capital Corp.*, 415 F.3d 114 (1st Cir.
2005).  In *Callahan,* the district court found that parties who had not filed a proof of
claim in a receivership proceeding could not object to a distribution order entered in that
action:

> Instead of going through the process of trying to file a late claim with the
> Moneta Receiver, or requesting leave from the District Court to file a
> late claim, the [appellants] chose to file an objection to the Moneta
> Claims Distribution Order.  The district court dismissed [appellants']
> objection to the Claims Disposition [*sic*] Order for lack of standing,
> stating that "it is clear that [appellants] had not complied with the
> [Claims Bar Date] as to Moneta; and, therefore, there's no claim
> pending, and there's nothing for the [appellants] to object to."

*Callahan*, 415 F.3d at 117.  The First Circuit agreed with the district court, concluding
that the appellants' failure to file a claim deprived them of standing to attack the
distribution order.  *Id.* at 118.

any claim Fryer did make was disallowed by the Bankruptcy Court. Thus, Fryer would not be considered a "person aggrieved" by the order of distribution. As one Bankruptcy Appellate Panel recently has noted:

> Once [its] claims were disallowed, [a creditor who had filed proofs of claim] had no distribution interest in the estate. Even if [the creditor's] debt somehow survived this process, [it] is not entitled to receive a distribution as a creditor[. . .]. Thus, when [the creditor's] claims were disallowed, it lost any pecuniary interest it may have had in the case.

*See In re Southern Medical Arts Companies, Inc.*, 343 B.R. 258, 263 (10th Cir. BAP 2006)

(creditor lacked standing to challenge the bankruptcy court's approval of a compromise, and thus lacked standing to appeal the judgment); *see also In re Urban Broadcasting Corp.*, 304 B.R. 263, 270-71 (E.D. Va. 2004) (*pro se* claimant in a Chapter 7 bankruptcy proceeding lacked standing to appeal a distribution order, where he did not file timely objections to the proposed distribution).

Finally, the Court notes that Fryer does not dispute Enterprise's contention that "[a]ll of the funds in the bankruptcy estate have been distributed pursuant to the [Bankruptcy Court's] approved distribution." (Motion at 6). Although Enterprise does not argue the point, the Court observes that "an appeal should be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Continental Airlines*, 91 F.3d 553, 559 (3d Cir. 1996). As the Third Circuit explained:

> Factors that have been considered by courts in determining whether it would be equitable or prudential to reach the merits of a bankruptcy appeal include (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments.

*In re Continental Airlines*, 91 F.3d at 560. "[T]he foremost consideration has been whether the reorganization plan has been substantially consummated." *Id.*

All of the foregoing factors weigh in favor of applying equitable estoppel here. First, Enterprise avers — and Fryer does not dispute — that all of the assets at issue in the proceedings have been liquidated and distributed. Second, there is no evidence that anyone sought a stay of distribution. Third, permitting Fryer to challenge the distribution now would affect the rights not only of Enterprise, but of other parties who were awarded shares of that distribution, but are not before this Court. Fourth, given that Fryer's substantive challenges to the distribution — which allege fabricated findings and doctored transcripts in the bankruptcy court — go to the heart of the very August 26, 2005 decision that he is not entitled to appeal, permitting Fryer to intercede now could not be accomplished "without unraveling the entirety of the plan." *See Nordhoff Investments, Inc. v. Zenith Electronics*, Corp. 258 F.3d 180, 189 (3d Cir. 2001). Fifth, and finally, it is obvious that permitting Fryer — a party who did not file a formal proof of claim, neglected to file timely objections to the proposed distribution, and never sought a stay of the distribution — to cry "foul" after the distribution would undercut the finality of bankruptcy judgments. Thus, although it theoretically may be possible for the Court to give Fryer some relief if it were so inclined (and it is not), the equities involved in this case weigh heavily against what could only be considered a gratuitous gesture. *See In re Continental Airlines*, 91 F.3d at 560 (affirming the district court's dismissal of an appeal following a consummated bankruptcy reorganization "for equitable and prudential reasons even though some effective relief [was] available.").

In the end, the Court concludes that Fryer may not appeal the Bankruptcy Court's March

30, 2006 order of distribution. He does not deny having received the Bankruptcy Court's March

5, 2006 order announcing that a distribution would take place, and he has not shown that he filed

a proof of claim or timely objections to the proposed distribution. Nor has shown that he is in

any other sense a "person aggrieved" by the distribution. *See In re Dykes,* 10 F.3d at 187.

Indeed, given that the distribution already occurred, Fryer's challenge to the distribution order

appears to be moot.

An appropriate order follows.

BY THE COURT:

Thos M. Hardiman

Dated: October 23, 2006

Thomas M. Hardiman
United States District Judge

cc: All counsel and parties of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT B. FRYER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 2:06-cv-0550 |
| | ) | |
| ENTERPRISE BANK, | ) | Judge Thomas M. Hardiman |
| | ) | |
| Appellee. | ) | |

## O R D E R

AND NOW, this 23rd day of October, 2006, it is hereby

ORDERED that Enterprise's Motion to Dismiss the Appeal (Doc. No. 3) is GRANTED.

It is also ORDERED that Enterprise's Motion to Strike Items from the Record on Appeal

(Doc. No. 3) and Fryer's Motion to Disregard an Agreement (Doc. No. 10) are hereby DENIED

AS MOOT.  The Clerk of Courts shall mark this case CLOSED.

BY THE COURT:

*Thos M. Hardiman*

Thomas M. Hardiman
United States District Judge

cc: counsel and parties as listed below

Robert B. Fryer, *pro se*
653 LaMarido Street
Pittsburgh, PA 15226

William E. Kelleher, Jr., Esq.
11 Stanwix Street, 15th Floor
Pittsburgh, PA 15222-1319

Thomas D. Maxson, Esq.
11 Stanwix Street, 15th Floor
Pittsburgh, PA 15222-1319